IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## MARK MEDLEY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-54364     James K. Clayton, Jr., Judge**

---

**No. M2005-00295-CCA-R3-PC - Filed August 11, 2005**

---

The petitioner, Mark Medley, appeals from the Rutherford County Circuit Court's denial of post-conviction relief. In his petition, and now in this appeal, he alleges that he entered an involuntary guilty plea based upon the ineffective assistance of counsel. For the reasons set forth in this opinion, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Richard T. Roney, Murfreesboro, Tennessee, for the appellant, Mark Medley.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Laurel A. Nutt, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Facts and Procedural History

On March 12, 2003, the petitioner pled guilty to rape of a child, a Class A felony. The trial court imposed a twenty-year sentence at 100%. Pursuant to a plea agreement, the sentence was ordered to be served concurrently with a fifteen-year sentence that the petitioner had recently received for the same charge in another county. The facts underlying the offense were summarized at the plea hearing as follows:

> The facts of this case are prior to the end of the school year in the year 2002, [the petitioner] digitally penetrated, constituting rape of child, an 11 year-old victim in his bed at his residence. He then told her to remove her panties and to get on her knees and video taped her while touching her butt . . . .

The following colloquy occurred at the plea hearing:

| | |
|---|---|
| [The court] | . . . do you understand you have a right to enter a not guilty plea and have a jury trial in this case? |
| [The petitioner] | Yes, Your Honor. |
| . . . . | |
| [Counsel] | . . . What did I tell you the maximum sentence depending on what your prior criminal record was? |
| [The petitioner] | 60 |
| [Counsel] | 60 years. But in light of your prior record, you are probably looking at a 15 to 25 year sentence, correct? |
| [The petitioner] | Yes, sir. |
| . . . . | |
| [Counsel] | . . . did I do everything that you requested me to do? |
| [The petitioner] | Yes, sir. |
| . . . . | |
| [Counsel] | Is there anything at all that I have not done that you wanted me to do? |
| [The petitioner] | No, sir. |
| [Counsel] | Are you satisfied with the way that I have handled your case? |
| [The petitioner] | Completely. |
| . . . . | |
| [The court] | . . . you do understand that you are entering a plea of guilty to rape of a child with a 20 year sentence at 100 percent. And why are you entering this plea, sir? |

| | |
|---|---|
| [The petitioner] | I figured it would be in the best interest on my behalf and on behalf of the victim and the family. |
| [The court] | Okay. Feel like it is in your best interest? |
| [The petitioner] | Yeah. |
| [The court] | Has anyone forced you or coerced you into entering this plea? |
| [The petitioner] | No, sir. |
| [The court] | You are entering it freely and voluntarily? |
| [The petitioner] | Yes, sir. |
| [The court] | You are not here under the influence of any drugs or intoxicants or anything that would cause you not to understand what's going on today, are you? |
| [The petitioner] | No, sir. |
| [The court] | You feel like you fully understand what you are doing? |
| [The petitioner] | Yes, sir. |
| [The court] | Is this what you want to do? |
| [The petitioner] | Yes, sir. |

On July 21, 2003, the petitioner filed a petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel and entered an involuntary plea. At a subsequent hearing on the petition, he testified that his statements at the plea hearing were intentional lies, uttered in fear of his previous record and recent conviction for child rape "getting brought to light here, [and] because [he] didn't want [the court] to run [the two sentences] consecutive . . . ." He explained, "[counsel] told me I could get 60 years, and I believed him. And in light of 60 years, I took the 20."

The petitioner alleged that, in addition to the sentence potential, he did not understand the elements of rape, so as to enter a knowledgeable plea. The petitioner averred that he would have "opted" for trial had counsel adequately explained the offense. However, the State questioned the veracity of the petitioner's ignorance of the charge by cross-examining him on the fact that he had just recently pled guilty to rape of a child and had also pled guilty as a juvenile to digital rape "of a little girl . . . . Same as in this case."

The petitioner next argued that counsel did not familiarize himself with the facts or law in relation to the case. The petitioner stated, "[T]here was no proof in there that actual penetration had occurred. There was only a statement . . . . There was no medical reports." However, the State elicited testimony from the petitioner that he pled guilty to this offense despite knowing that there was no physical or medical evidence against him. Eventually, he admitted that his decision to plead guilty was based upon his fear of the jury imposing a harsher sentence. The petitioner also admitted to writing an "apology" letter to the victim and discussing the possibility of its suppression with counsel.

Counsel testified that he had been with the public defender's office for "12 or 13 years now" and had represented "probably over 100" sex offenders. Counsel stated, "I usually not only inform [clients] on what the law is. But in these type of cases, oftentimes I make copies of the statutes regarding the law and share it with them and go over it with them . . . ." Counsel acknowledged that he gave the petitioner "all the options," "talked to him about the apology letter," and spoke with the petitioner about the lack of medical evidence. Counsel stated that the petitioner "was aware that this case turned on his testimony and the child's testimony."

Counsel admitted that he had never requested to interview the child before the petitioner pled guilty. However, he stated that the mother and the detective involved in the case did interview the child and that he had reviewed a copy of the incident report. Counsel stated:

> We discussed the discrepancies in this report from the officer that wrote this report. That there were different discrepancies. That at one point in time she tells somebody that there wasn't penetration. And then later on she tells someone - - the mother comes back and says that there was penetration. And we discussed that in our discussions at the jail.
>
> . . . .
>
> We also discussed the lesser charge of aggravated sexual battery. If the jury believed that there was no penetration, that that would be a B Felony at 100 percent, which would carry 8 to 12 years at 100 percent.

Before denying post-conviction relief, the trial court stated, "I do have a real problem with [the petitioner's] credibility. And I am sorry about that . . . . But when you testify that you swore under oath and lied to this Court at least twice previously, I have trouble believing what you state under oath here today." The trial court then reiterated the petitioner's statements at the guilty plea hearing, stating that such were "diametrically opposed" to the allegations of his petition, and denied post-conviction relief. The petitioner now brings this appeal.

**Analysis**

-4-

In order to succeed on a post-conviction claim, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). To support a claim for ineffective assistance of counsel, the petitioner must show that his counsel's performance fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This showing requires evidence that (1) counsel's performance was deficient and (2) the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). To satisfy the prejudice prong in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The underlying issues in claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. Burns, 6 S.W.3d at 461. As such, our review is *de novo* with a presumption of correctness given to the trial court's findings of fact unless the evidence preponderates otherwise. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

In the present case, much of the petitioner's ineffective assistance of counsel claim is undercut by his own testimony at the post-conviction hearing. The petitioner admitted that counsel met with him to discuss the case and the possibility of suppressing his incriminatory letter. Furthermore, he discredited his own testimony and ineffective assistance of counsel claim by stating that his assertions at the plea hearing were lies and the reason he pled guilty was, in fact, because he feared his prior record would get "brought to light here" and justify a greater sentence or consecutive sentences.

The petitioner's remaining argument is that counsel should have performed a more thorough investigation. At the post-conviction hearing, counsel admitted that he did not interview the child before the petitioner pled guilty. Obviously, the representation of a criminal defendant entails certain basic duties. Fundamental to effective representation of an accused is the duty of an attorney to conduct reasonable investigations, both factual and legal, to determine what matters of defense can be developed. See Strickland, 466 U.S. at 690-91. Ordinarily, such investigations should include every effort to interview witnesses, particularly the victim of the offense, so as to adequately advise the defendant. See Baxter, 523 S.W.2d at 933. However, in this case, both the petitioner and counsel possessed the facts underlying the offense. The trial court accredited counsel's testimony that he specifically discussed the potential discrepancies in the child's statements as evidenced in the incident report with the petitioner and that the petitioner "was aware that this case turned on his testimony and the child's testimony." Moreover, the petitioner admitted that he pled guilty to this offense despite knowing that there was no physical or mental evidence against him.

Even if failing to interview the victim did exemplify deficient performance, the petitioner must still show that, but for the deficiency, "he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The record reflects that the petitioner repeatedly assured the trial court at his guilty plea hearing that he was well aware of the rights he was forfeiting by pleading guilty, he was satisfied with the representation of counsel, and he was freely and

voluntarily pleading guilty. This Court simply cannot conclude that the petitioner did not understand the consequences of his guilty plea, the elements of the offense of child rape, or the potential sentence of this crime for which he had twice before pled guilty.

Additionally, there is no proof in the record to indicate that the petitioner would not have pled guilty if counsel had interviewed the victim. As stated, both the petitioner and counsel possessed the facts underlying the offense. Nevertheless, the petitioner chose to plead guilty in order to avoid consecutive sentencing. We conclude that this decision was knowingly and voluntary. This issue is without merit.

## Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE